IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) CRIMINAL ACTION NO. 02:06-237-1 |
| v. | ) |
| | ) |
| CHRISTOPHER FEKOS, | ) JUDGE KIM R. GIBSON |
| Defendant. | ) |

### MEMORANDUM OPINION & ORDER

**Gibson, J.,**

Now before the Court is Defendant Christopher Fekos' Motion to Transfer Venue (Document No, 84), as well as Defendant Joseph Howcroft's Response thereto (Document No. 85). Defendants were indicted in the Pittsburgh Division of the Western District of Pennsylvania on June 28, 2006. Document No. 1. The docket for this matter contains a number of recusal orders from judges in that division, and the matter was reassigned to this Court (the Johnstown Division of the Western District of Pennsylvania) on September 28, 2006. Document Nos. 23-30, & 34. Accordingly, Defendant was transferred from a detention facility in Pittsburgh, Pennsylvania, to the Cambria County Jail. Though Magistrate Judge Amy Hay has set pretrial bond, Defendant has evidently been unable to meet the conditions of release—which include the execution of a $250,000 corporate surety bond—and remains incarcerated in Cambria County.[1] *See* Criminal Docket No. 2:07-76, Document No. 19. Trial in the Johnstown Division is scheduled to begin July 9, 2007. Document No. 74.

Fekos now moves to have the place of trial returned to the Pittsburgh Division pursuant to FED. R. CRIM. P. 18 and 21. As Defendant's motion recounts, this matter stems from a fifteen-count

---

[1] The Court notes that Defendant has recently moved to modify the conditions of his release. Document No. 86. Magistrate Judge Hay will address that motion, which has no impact on the matter *sub judice*.

1

indictment alleging conspiracy and financial fraud against several victims. Most witnesses reside in the Pittsburgh area; the offices of both the prosecution and counsel for Fekos are in Pittsburgh; and none of the relevant conduct charged in the indictment occurred in the Johnstown area. Additionally, the Parties anticipate that trial will last at least three weeks. Document No. 84, ¶¶ 2-4. Fekos also argues that transfer is appropriate because his "financial burden will be greatly increased if this case is tried in Johnstown because counsel will incur substantial additional expense since he will be required to stay overnight during trial." *Id.* at ¶ 5.

As Defendant Howcroft notes in response to the motion to transfer, "the case against Christopher Fekos has not been severed from the case against Joseph Howcroft and [Howcroft's] interests are at issue in connection with any proposed transfer of the trial of this matter as well." Document No. 85, ¶ 2. Howcroft asserts his belief that "significant pre-trial publicity will attach to this case and that in the interests of justice, all the parties might be well served to have the case tried in Johnstown as opposed to Pittsburgh so as to . . . better insure that both the Defendants in the case receive a fair trial." *Id.* at ¶ 3.

There is no constitutional right to trial in any particular division. *United States v. Anderson*, 328 U.S. 699, 704-05, 66 S. Ct. 1213, 90 L. Ed. 1529 (1946) ("The constitutional specification is geographic; and the geography prescribed is the district or districts within which the offense is committed."); *United States v. Knop*, 701 F.2d 670, 675 (7th Cir. 1983) (citing *United States v. Young*, 618 F.2d 1281, 1288 (8th Cir. 1980)); *cf. Zicarelli v. Dietz*, 633 F.2d 312, 318 (3d Cir. 1980) (holding that the constitution only guarantees criminal defendants a jury from the district where the alleged crimes occurred). According to the Advisory Committee, FED. R. CRIM. P. 18 specifically omits any requirement "that the prosecution . . . be in a division in which the offense was committed and vests

2

discretion in the court to fix the place of trial at any place within the district." The Court's discretion in fixing the place of trial is limited in part by the factors expressly set forth in the statute: "The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice." FED. R. CRIM. P. 18. Aside from convenience and promptness, other permissible considerations include docket management, logistics, and pretrial publicity. *United States v. Lipscomb*, 299 F.3d 303, 342-48 (5th Cir. 2002).[2]

Fekos argues that the location of trial witnesses and counsel, as well as his own residence, suggests that transfer to Pittsburgh is appropriate. All else being equal, the Court might agree. The distance between Johnstown and Pittsburgh, however, is not so burdensome as to outweigh the factors that militate in favor of the present venue. By Fekos' own estimation, Pittsburgh is approximately seventy-five miles from Johnstown. Document No. 83, ¶ 3. While perhaps not negligible, such a distance by itself does not establish the substantial prejudice that requires transfer. *United States v. Duncan*, 919 F.2d 981, 985 (5th Cir. 1990) ("An intradistrict transfer is not required absent a strong showing of prejudice." (citations omitted)). Nor does the expense and difficulty that trial in Johnstown might impose on a defendant from Pittsburgh. While Congress has tried "to reduce the difficulties . . . . caused by a trial at a distance from . . . home and friends," *United States v. Di James*, 731 F.2d 758, 762 (11th Cir. 1984), it cabined its efforts to judicial districts, recognizing that the propriety of venue "should not be hemmed in by artificial boundary lines drawn by Congress." *United States v. Lewis*, 504 F.2d 92, 97 (6th Cir. 1974).

---

[2] Though Fekos also cites FED. R. CRIM. P. 21 for support, that rule governs transfers between districts, not intra-district transfers between divisions. *See* FED. R. CRIM. P. 21 ("Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district. . . ."); *United States v. Jacobs*, No. 05-64, 2006 U.S. Dist. LEXIS 6725, at *5 n.1 (W.D. Pa. Feb. 22, 2006).

3

Guided by its own discretion, the Court cannot agree that Pittsburgh is a more suitable venue for this prosecution. Notwithstanding the minimal inconvenience to trial participants and the additional burden on Defendant Fekos, the prompt disposition of this matter depends on there being a presiding judge; nine members of this Court in the Pittsburgh Division recused themselves from Defendant's case before it was assigned to this division.[3] Moreover, without any indication that the Court should sever the cases against Fekos and Howcroft, the latter's opposition to transfer is significant. Howcroft emphasizes the possibility that pretrial publicity will have a more prejudicial impact on a trial in Pittsburgh than on a trial in Johnstown. While drawing no conclusions about the amount or nature of publicity this matter may receive, the Court agrees that Johnstown Division jurors are generally less likely than Pittsburgh Division jurors to have considered this prosecution prior to *voir dire*.

Because the above-captioned matter was assigned to this Court in part because of the recusal of a majority of Pittsburgh judges, and because the distance between Pittsburgh and Johnstown is not so great as to unduly inconvenience trial participants, the Court will not transfer this case to a different venue. The prime interests of the public and the Defendants in the prompt resolution of this case, as well as the interests of this Court in fairly adjudicating the matters before it, outweigh any consideration for the location of witnesses and counsel. Accordingly, the motion must be denied.

An appropriate Order follows.

---

[3] An additional member of the Court was assigned to this case and then unassigned.

AND NOW, this 13th day of April, 2007, upon consideration of Defendant Christopher Fekos' Motion to Transfer Venue (Document No. 84), **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

BY THE COURT:

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**

Cc:   **All counsel of record**